IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING DIVISION

STEPHEN MADER,

    Plaintiff,

v().                                         Civil Action No.: 5:17-cv-00061-FPS
                                           Honorable Judge Frederick Stamp, Jr.

CITY OF WEIRTON,
ROB ALEXANDER,
TRAVIS BLOSSER, and
RYAN KUZMA

    Defendants.

## FIRST AMENDED COMPLAINT

### SUMMARY OF PLAINTIFF'S CLAIMS PURSUANT TO FED. R. CIV. P. 8

    Plaintiff Stephen Mader is an Afghanistan War veteran, retired Marine, and former officer with the City of Weirton Police Department. On the night of May 6, 2016, Mr. Mader was on duty for the Weirton Police Department when he received a domestic dispute call. When he arrived on the scene, Mr. Mader encountered Ronald J. Williams, an African-American man who was visibly distraught and attempting to commit "suicide by cop," pleading with Mr. Mader to "just shoot me." Mr. Mader used his training and experience to attempt to de-escalate the situation. Based on his combat experience, military training, and police training, Mr. Mader reasonably believed that Mr. Williams—although holding a gun—intended to inflict self-harm and did not pose a threat of harm to others. As it turned out, the gun held by Mr. Williams was not loaded. When two more officers arrived on the scene, one of them shot and killed Mr. Williams. Rather than respect Mr. Mader's informed judgment and experience and his reasonable attempt to de-escalate the situation, the City of Weirton, in a flawed effort to buttress the other officer's use of deadly force, wrongfully

Case 5:17-cv-00061-FPS   Document 18-1   Filed 10/03/17   Page 2 of 14   PageID #: 74

terminated Mr. Mader's employment. When that termination came to light in the local press, the City then engaged in a pattern of retaliation designed to destroy Mr. Mader's reputation.

Defendants' conduct violated Mr. Mader's right to be free from the loss of employment in violation of public policy, his First and Fourteenth Amendment rights under the United States Constitution, and his rights under Article III, Section 7 and Article III, Section 10 of the West Virginia Constitution.

## PARTIES

1.  Plaintiff Stephen Mader is an adult resident of Brooke County, West Virginia.

2.  Defendant City of Weirton, West Virginia ("Weirton") is a municipality located in Hancock County, West Virginia. At all relevant times herein, Defendant Weirton was authorized to and operated a municipal police department.

3.  With respect to the claims asserted herein, Defendant Weirton was acting by and through its duly elected and/or appointed officials and/or policymakers, who participated in, approved of, and/or acquiesced in the violation of the Plaintiff's legal rights as set forth herein. At all relevant times, these policymakers were acting under color of law and in accordance with the custom, practices, and policies of the City of Weirton.

4.  Defendant Travis Blosser is an adult resident of Brooke County, West Virginia. At all relevant times, Defendant Blosser acted under color of state law and was the City Manager and day-to-day policymaker for Defendant Weirton. Defendant Blosser, based on his intentional acts and/or the customs, policies, and practices that he implemented and/or in which he acquiesced, is responsible for the violation of Plaintiff's constitutional and common-law rights. Defendant Blosser is named in his individual capacity.

5.  Defendant Rob Alexander is an adult resident of Brooke County, West Virginia. At

Case 5:17-cv-00061-FPS   Document 18-1   Filed 10/03/17   Page 3 of 14   PageID #: 75

all relevant times, Defendant Alexander acted under color of state law and was the Chief of the Weirton Police Department and day-to-day policymaker for Defendant Weirton. Defendant Alexander, based on his intentional acts and/or the customs, policies and practices which he implemented and/or in which he acquiesced, is responsible for the violation of Plaintiff's constitutional and common-law rights. Alexander is named in his individual capacity.

6. Defendant Ryan Kuzma is an adult individual residing in Brooke County, West Virginia. At all relevant times, Defendant Kuzma acted under color of state law as a police officer employed by Defendant Weirton. Defendant Kuzma, based upon his intentional acts and/or the customs, policies and practices of the City of Weirton, is responsible for the violation of Plaintiff's constitutional and common-law rights. Defendant Kuzma is named in his individual capacity.

## JURISDICTION & VENUE

7. This action arises under 42 U.S.C. § 1983 to redress the deprivation under color of state law of rights, privileges, and immunities secured by the Constitution of the United States. The rights sought to be redressed are guaranteed by the First and Fourteenth Amendments to the United States Constitution. This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343 and pendent jurisdiction over Plaintiff's West Virginia claims.

8. Venue is proper in the Northern District of West Virginia pursuant to 28 U.S.C. § 1391. The actions relevant to this case occurred there and the City of Weirton is located there.

## FACTS

9. Plaintiff Stephen Mader is a life-long resident of the City of Weirton.

10. Following his graduation from Weirton High School, Mr. Mader enlisted in the United States Marine Corps. He completed two tours of duty, including one in Afghanistan. He received an honorable discharge in 2013. He continues to serve his country as a member of the

Army National Guard, holding the rank of Specialist.

11. Throughout his Marine Corps training, Mr. Mader was trained to assess the threat level posed by individuals he encountered, including taking into account an individual's demeanor, physical appearance, and actions.

12. On July 24, 2015, Mr. Mader was hired as a probationary police officer in the Weirton Police Department, operated by Defendant Weirton.

13. On or about December 2015, Mr. Mader successfully completed the West Virginia State Police Academy Basic Training Course and was certified as a West Virginia Municipal Police Officer. Mr. Mader finished 15th in his class.

14. The State Police Academy trained Mr. Mader that a police officer was not permitted to use deadly force except in cases where the officer concluded, based on the facts and circumstances known to him, that the target of such force posed an immediate threat of death or serious bodily injury to himself or others.

15. The Weirton Police Department's Use of Force Policy prohibits a Weirton police officer from using deadly force except "in defense of himself/herself or others from an objectively reasonable belief of an immediate threat of death of serious bodily injury."

16. The Fourth and Fourteenth Amendments of the United States Constitution prohibit a police officer from using deadly force unless that officer, based upon the facts and circumstances known to him, has reason to believe that the target of such force poses an immediate threat of death or serious bodily injury to such officer or others.

17. Article III, Section 6 of the West Virginia Constitution prohibits a police officer from using deadly force, unless that officer, based upon the facts and circumstances known to him, has reason to believe that the target of such force poses an immediate threat of death or serious

bodily injury to such officer or others.

18. At all times relevant, Mr. Mader reasonably believed, based upon the United States and West Virginia constitutions, his Marine training, his municipal police training, and in accordance with the Weirton Use of Force Policy, that it was unconstitutional and illegal to use deadly force unless he believed that an imminent threat of death and/or serious bodily harm to himself or others existed.

19. On May 6, 2016, a woman called 911 and reported that Ronald J. Williams, a 21-year-old African-American man, had threatened to kill himself with a knife.

20. When Mr. Williams discovered that a 911 call had been made, he retrieved a pistol from his car and stated his intent to get the police to shoot him.

21. The woman who made the first 911 call made a second call and reported that Mr. Williams had a gun, but that it was not loaded.

22. Mr. Mader was the first officer to respond to the scene. There, he encountered Mr. Williams, who was emotionally upset but not aggressive or violent.

23. When Mr. Mader arrived on the scene, Mr. Williams' hands were behind his back. Mr. Mader ordered him several times to show him his hands. Mr. Williams eventually complied and brought his hands to his side, where Mr. Mader observed that Mr. Williams was holding a silver handgun.

24. Possession of a handgun is legal in West Virginia.

25. Mr. Mader ordered Mr. Williams to drop the gun, to which Mr. Williams responded, "I can't do that. Just shoot me."

26. Based on Mr. Williams' actions, statements, and visibly despondent demeanor, Mr. Mader concluded that Williams was attempting to commit "suicide by cop".

27.     In light of the facts and circumstances known to Mr. Mader, he did not believe that Mr. Williams posed a risk of death or serious bodily injury to Mr. Mader or others.

28.     Mr. Mader informed Mr. Williams that he was not going to shoot him and instructed Mr. Williams to put the gun down. Mr. Williams responded by pleading over and over, "Just shoot me."

29.     While Mr. Mader attempted to talk Mr. Williams down, Weirton Police Officers Baker and Kuzma arrived. Mr. Williams raised his gun and Defendant Kuzma immediately shot Mr. Williams in the head, killing him.

30.     As reported by the woman who had called 911, Mr. Williams' gun was not loaded.

31.     Mr. Mader completed a handwritten statement on the night of the shooting in which he reported that Mr. Williams had pleaded with him to, "Just shoot me."

32.     At all times relevant, Defendants knew that Mr. Mader had a reasonable belief that Williams sought to commit "suicide by cop."

33.     Following the events of May 6, 2016, and in accordance with Weirton Police Department standard procedure, Mr. Mader was placed on administrative leave pending an evaluation by a social worker.

34.     Mr. Mader returned to work on May 12, 2016.

35.     On May 17, 2016, Mr. Mader was again placed on administrative leave, pending a purported investigation into his actions on May 6, 2016.

36.     On June 7, 2016, the Weirton Police Department notified Mr. Mader that his employment had been terminated due to his alleged "failure to meet probationary standards of an officer" and "apparent difficulties in critical incident reasoning."

37.     Upon information and belief, the Weirton Police Department terminated Mr.

Mader's employment because he chose not to use deadly force to shoot and kill an African-American man, who was suicidal, and whom Mr. Mader reasonably believed did not pose a risk of death or serious bodily injury to Mr. Mader or others.

38. Upon information and belief, the Weirton Police Department terminated Mr. Mader's employment because his decision not to use deadly force to shoot and kill a suicidal African-American male, made or could have been construed to make Defendant Kuzma's use of deadly force appear unreasonable or excessive under the circumstances.

39. Upon information and belief, Defendants falsely accused Mr. Mader of negligence, poor judgment, deficient "critical incident reasoning," cowardice, and/or other gross deficiencies in his capabilities as a police officer. These false allegations were designed to impugn Mr. Mader's judgment in not using deadly force and to otherwise bolster the reasonableness of Defendant Kuzma's use of such force.

40. At no time after May 6, 2016, did any Weirton Police Department official contact Mr. Mader to ascertain the reasons for his actions on May 6.

41. On June 15, 2016, Mr. Mader was notified that a hearing regarding his termination had been scheduled for June 29, 2016, before the City of Weirton Police Officer's Hearing Board, pursuant to West Virginia Code § 8-14-20.

42. Despite his reasonable efforts, Mr. Mader was unable to obtain counsel to represent him at the hearing until the day before it was scheduled. His counsel requested a continuance, which was approved by the City Attorney, but then refused by Defendant Alexander.

43. No testimony was taken at the hearing.

44. Sometime thereafter, the Hearing Board issued a decision upholding Defendant Weirton's decision to terminate Plaintiff's employment, effective June 29, 2016.

45. On September 11, 2016, an article appeared in the Pittsburgh Post-Gazette entitled "Weirton Terminates Officer Who Did Not Fire at Man With Gun." Sean D. Hammill, *Weirton Terminates Officer Who Did Not Fire at Man with Gun*, Pittsburgh Post-Gazette (Sept. 11, 2016), *available at* http://www.post-gazette.com/local/region/2016/09/11/Weirton-fired-officer-who-did-not-fire-at-man-with-gun/stories/201609090080.

46. On September 13, 2016, Defendant Weirton held a press conference in which it acknowledged, through Defendants Alexander and Blosser, that it had terminated Mr. Mader's employment.

47. During the press conference, acting under color of state law, Defendants Alexander and Blosser falsely claimed both that Mr. Mader's employment was terminated due to "multiple" prior incidents and that Mr. Mader was terminated for "conduct unbecoming" in response to a "series of incidents."

48. During the press conference, Defendants Alexander and Blosser falsely accused Mr. Mader of failing to inform Defendat Kuzma of Mr. Williams' suicidal nature, despite knowing at the time the statements were made that Mr. Mader did not have an opportunity to do so.

49. Defendants Alexander and Blosser further knew that the 911 operator possessed that same information, as well as the information that the weapon held by Williams was unloaded, and yet failed to report that to the officers on the scene.

50. During the press conference, Defendants Alexander and Blosser falsely claimed that Mr. Mader unnecessarily escalated the incident with Mr. Williams, "froze" during the incident, and provided false information to the Post-Gazette because he was a "disgruntled employee" and a "bad cop."

51. Following the press conference, on September 14, 2016, Defendant Kuzma sent

8

Mader a text message in which he stated, *inter alia*, that Mr. Mader was "a coward[,]" that Mr. Mader "didn't have the balls to save [his] own life[,]" and that Mr. Mader and his mother were "loud mouth pieces of shit" who would get someone in law enforcement killed.

52.     Mr. Mader did not respond to this text message.

53.     On September 15, 2016, Defendant Kuzma arrived, in full uniform, at the school which Mr. Mader was attending to obtain a CDL license, and repeated the same profanity-laced allegations in front of Mr. Mader's instructor and classmates.

54.     The instructor reported this incident to the school's owner, who then reported it to Defendant Alexander. Defendant Alexander denied that the incident occurred and refused to take a report.

55.     On information and belief, Defendant Weirton never conducted an investigation into Defendant Kuzma's actions or disciplined Defendant Kuzma for this incident.

56.     Defendants' conduct in terminating Plaintiff's employment, disseminating false information about him, and harassing him following his termination, as herein described, was in reckless disregard of Plaintiff's clearly-established rights.

57.     As a result of Defendants' conduct as described herein, Plaintiff has suffered constitutional violations, lost wages, income, benefits, and other remuneration, and will continue to suffer such losses into the future.

58.     As a result of Defendants' conduct as described herein, Plaintiff has suffered embarrassment, humiliation, emotional distress and damage to his reputation.

### *MADER V. WEIRTON, WEST VIRGINIA*<br>WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

59.     Plaintiff hereby incorporates paragraphs 1 through 58, as if fully set forth herein.

60. Defendant Weirton terminated Plaintiff's employment because of Plaintiff's failure to use deadly force against Williams.

61. Both the United States Constitution and the West Virginia Constitution prohibit the unreasonable use of force by police officers.

62. The provisions of the West Virginia Constitution prohibiting unreasonable use of force have been interpreted consistently with the United States Constitution.

63. The United States Constitution prohibits the use of deadly force by a police officer except where the officer has probable cause to believe that the subject poses an immediate risk of death or serious bodily injury to himself or others.

64. Use of deadly force under other circumstances is excessive and violates both the West Virginia and the United States Constitution.

65. It is the clear public policy of the United States and the State of West Virginia that law enforcement officers not engage in excessive force.

66. It is the clear public policy of the United States and West Virginia that law enforcement officers not violate the rights guaranteed to citizens by their respective constitutions.

67. It is the clear public policy of West Virginia and the United States that police officers not use deadly force against individuals whom they do not believe pose an immediate risk of death or serious bodily injury to themselves or others.

68. Terminating a police officer's employment because the officer chose not to use deadly force when the officer reasonably believed such force was unnecessary violates public policy; it encourages the unnecessary use of deadly force by threatening those officers with the loss of employment if such force is not used.

69. Defendant Weirton has no overriding legitimate justification for encouraging the

use of deadly force by imposing sanctions—including termination of employment— on an officer who does not reasonably believe such force is appropriate based on the facts and circumstances known to such officer.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment for Plaintiff and against Defendant Weirton and award Plaintiff compensatory damages, and such other relief as this Court may deem just, equitable and proper.

### *MADER V. WEIRTON, WEST VIRGINIA, TRAVIS BLOSSER AND ROB ALEXANDER* FOURTEENTH AMENDMENT STIGMA PLUS DAMAGE TO REPUTATION CLAIM

70. Plaintiff incorporates by reference paragraphs 1 through 69 as if set forth at length herein.

71. At various times, Defendant Weirton made false and defamatory statements regarding Plaintiff.

72. At all times relevant, the statements were made by Defendant Weirton's elected and/or appointed officials, including Defendants Blosser and Alexander, who were acting in their capacities as Defendant Weirton's policymakers.

73. As a direct result of the false accusations made by the Defendants against Plaintiff, Defendants have blackened Plaintiff's name and reputation, thus depriving him of liberty without due process of law.

74. The false and defamatory statements made by the Defendants were part and parcel of, and arose within the context of the termination of Plaintiff's employment with the Weirton Police Department.

75. Plaintiff was not afforded a timely hearing within which to respond to the false, malicious, derogatory and/or defamatory statements made about him by the Defendants.

WHEREFORE, Plaintiff requests judgment in his favor and against Defendants Weirton, Blosser and Alexander, an award of compensatory damages, the award of costs and attorney's fees, and such equitable relief as the Court deems appropriate.

### *MADER V. WEIRTON, WEST VIRGINIA, TRAVIS BLOSSER, ROB ALEXANDER AND RYAN KUZMA*
### FIRST AMENDMENT & ARTICLE III, § 7 RETALIATION CLAIM

73. Plaintiff incorporates by reference paragraphs 1 through 72 as if set forth at length herein.

74. Defendants Weirton, Blosser, Alexander and Kuzma retaliated against Plaintiff due to a Pittsburgh Post-Gazette article in which Plaintiff was quoted regarding the shooting death of Mr. Williams.

75. At all times relevant, Defendants retaliated against Plaintiff by disseminating false, malicious, derogatory statements about Plaintiff, including statements involving private information about Plaintiff.

76. The defamatory, malicious, and derogatory statements made by Defendants, including statements involving private information about Plaintiff, were not necessary for Defendants to respond to the statements made by Plaintiff in the Post-Gazette article.

77. At all times relevant, Defendant Weirton, acquiesced in, approved, and/or participated in the retaliatory conduct of Defendant Kuzma, including the use of his badge of authority to publicly intimidate, badger, and/or threaten Plaintiff.

78. As a result of Defendants' conduct, Plaintiff's reputation has been severely tarnished, his ability to obtain employment as a police officer has been impaired, he has suffered lost wages, benefits and other remuneration, embarrassment, humiliation, and emotional distress.

WHEREFORE, Plaintiff requests judgment in his favor and against Defendants Weirton, Blosser, Alexander, and Kuzma, an award of compensatory damages, the recovery of costs and attorney's fees, and such other relief as this Court deems just and equitable under the circumstances

## *MADER V. WEIRTON WEST VIRGINIA*
### FOURTEENTH AMENDMENT AND ARTICLE III, SECTION 10 PROCEDURAL DUE PROCESS CLAIM

79. Plaintiff incorporates by reference paragraphs 1 through 78 as if set forth at length herein.

80. Plaintiff was never afforded an opportunity to be heard prior to the termination of his employment.

81. The City of Weirton Police Officers Hearing Board's decision to affirm that the police department's decision to terminate Plaintiff's employment was made without Plaintiff being afforded the opportunity to present testimony, including his own.

82. Defendant Weirton unreasonably denied Plaintiff's request to continue the City of Weirton Police Officers Hearing Board hearing, even though such continuance was necessary in order to allow Plaintiff to retain counsel to represent him at such hearing.

83. As a result of Defendant Weirton's conduct in terminating Plaintiff's employment without due process of law, he has suffered lost wages, benefits, and other remuneration.

84. WHEREFORE, Plaintiff requests judgment in his favor and against Defendant Weirton an award of compensatory damages, the recovery of costs and attorney's fees, and such other relief as this Court deems just and equitable under the circumstances.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable in this matter.

RESPECTFULLY SUBMITTED, this 3rd day of October, 2017.

By Counsel,

        Respectfully submitted,

        /s/ Jamie Lynn Crofts
        Jamie Lynn Crofts
        West Virginia Bar No. 12730
        ACLU of West Virginia Foundation
        P.O. Box 3952
        Charleston, WV 25339-3952
        (304) 345-9246, ext. 102 / (304) 345-0207 (f)
        jcrofts@acluwv.org

        /s/ Timothy P. O'Brien
        Timothy P. O'Brien
        PA ID# 22104
        Law Office of Timothy P. O'Brien
        2103 Investment Building
        239 Fourth Avenue
        Pittsburgh, PA  15222
        (412) 232-4400

        *Pro Hac Vice*

        Attorneys for Plaintiff